UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

NICHOLAS SIMONSEN, an individual,

                Plaintiff,                              **COMPLAINT**

       -against-                                   **Jury Trial Demanded**

KSH AVIATION LLC, a limited liability company
(aka WINDY POINT CAPITAL PARTNERS, KSH
CAPITAL, LP and KSH LEASING LLC);
KSH CAPITAL LP, a limited partnership; PSP MANAGEMENT LP,
a limited partnership;
JEFFREY KELTER, an individual;
ROBERT SAVAGE, an individual; MICHAEL
FASCITELLI, an individual; THOMAS
GAHAN, an individual; and PAUL SALEM, an individual,

                Defendants.

-----------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.     Defendants are an affiliation of high-net-worth businessmen who, through closely held corporations they control, collectively own two Gulfstream private jets for their business and personal use. Defendants employ staff in all aspects of aviation, including Plaintiff, a pilot.

2.     Defendants fired Plaintiff in retaliation for Plaintiff having taken legally protected paid family leave in connection with the birth of his and his wife's twins, in violation of Title VII and analogous New York State statutes, which make it illegal to discriminate or retaliate against an employee based on the antiquated idea that attending to the birth of a child is predominantly, if not exclusively, the domain of women, not men.

3. Specifically, Plaintiff was fired on the last day of his paid family leave, not long after Defendant Jeffrey Kelter had vividly and extensively expressed his hostility to the idea of a man taking family leave to care for newborn children. Defendants gave Plaintiff no reason for his termination. Plaintiff was abruptly fired only one day after Defendants has scheduled him to fly, making any pretextual claims by Defendants to have terminated Plaintiff for performance-based or other non-discriminatory reasons implausible. In fact, Defendants uniformly praised Plaintiff as a skilled, trusted, and safe pilot, as well as for being well-liked by his colleagues and bosses throughout his four years flying them and their families.

4. Accordingly, Plaintiff hereby pleads pursuant to Title VII of the Civil Rights Act of 1964, as codified at 42 U.S.C. §§ 2000e-2000e-17 (amended in 1972 and 1991, and by the Pregnancy Discrimination Act of 1978), Pub. L. No. 102-166 ("Title VII"); the New York State Human Rights Law, 15 N.Y. Exec. Law §§ 215, *et seq.* and 15 N.Y. Exec. Law §§ 290 , *et seq.* ("NYSHRL"); and New York Labor Law, §§ 190, *et seq.* ("NYLL").

5. Plaintiff seeks compensatory and punitive damages as a result of having been discriminated and retaliated against on the basis of his sex in the context of childbirth, as well as compensatory damages for lost wages and the recovery of attorneys' fees and costs.

**PARTIES**

6. Plaintiff is a male who resides, and at all relevant times has resided, in Stony Brook, New York.

7. Defendant KSH Aviation LLC (aka Windy Point Capital Partners, KSH Capital LP, KSH Leasing LLC) ("KSH Aviation") is a limited liability company with headquarters at 386 Park Avenue, 20th Floor, New York, NY 10016.

2

8. Defendant KSH Capital LP ("KSH Capital") is on information and belief a limited partnership with headquarters at 386 Park Avenue, 20th Floor, New York, NY 10016.

9. PSP Management LP is on information and belief a limited partnership with headquarters at 386 Park Avenue, 20th Floor, New York, NY 10016.

10. Defendants KSH Aviation, KSH Capital, and PSP Management LP employed Plaintiff from December of 2019 through February of 2024 and/or functioned as joint employers of Plaintiff during that period.

11. Defendant Jeffrey Kelter is an individual residing and/or doing business in New York, New York.

12. Defendant Robert Savage is an individual residing and/or doing business in New York, New York.

13. Defendant Michael Fascitelli is an individual residing and/or doing business in New York, New York.

14. Defendant Thomas Gahan is an individual residing and/or doing business in New York, New York.

15. Defendant Paul Salem is an individual residing and/or doing business in Providence, Rhode Island.

16. At all relevant times, Plaintiff was an employee of Defendants KSH Aviation, KSH Capital, and PSP Management LP within the meaning of Title VII.

17. At all relevant times, the individual Defendants (Jeffrey Kelter, Robert Savage, Michael Fascitelli, Thomas Gahan, and Paul Salem) had supervisory authority over Plaintiff, and the authority to affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decisionmaker(s) able to determine Plaintiff's terms and conditions of employment

and were aware of, in fact or constructively, and ratified any adverse employment actions toward Plaintiff.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

19. This Court has supplemental jurisdiction over Plaintiff's state-law claims under the NYSHRL and NYLL pursuant to 28 U.S.C. § 1367.

20. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of New York.

21. Plaintiff timely filed Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 28, 2024 as to Defendants KSH Aviation and KSH Capital and received Notices of Right to Sue as to both Defendants from the EEOC on October 30, 2024. On December 6, 2024, Plaintiff filed an additional EEOC Charge as to Defendant PSP Management LP and received a Notice of Right to Sue as to PSP Management LP on December 9, 2024. Accordingly, Plaintiff has satisfied all procedural and administrative prerequisites for the commencement of this action.

**FACTUAL ALLEGATIONS**

*Background: Defendants' Business Structure and Plaintiff's Employment as a Pilot for Defendants*

22. Plaintiff began working as a pilot for corporate Defendants KSH Aviation and KSH Capital (collectively "KSH") and PSP Management LP ("PSP") in December of 2019, and remained employed by KSH/PSP until February 16, 2024. The corporate Defendants are referred to herein as "KSH/PSP."

23. The KSH/PSP corporate entities and individual Defendants run a private aviation business, controlled by the five individual Defendants, and own the two Gulfstream jets that chiefly serve the individual Defendants' business and personal air travel needs.

24. Plaintiff was one of several pilots employed by Defendants during the relevant period. KSH/PSP also employed numerous administrative, maintenance, and human resources personnel.

25. As a practical matter, it was the individual Defendants here who substantially controlled the terms and conditions of Plaintiff's employment. The five individual Defendants would submit their flying needs through senior KSH/PSP employees collectively in charge of scheduling—the Head of Flight Department, Director of Aviation, Head Pilot, and Dispatcher—who would in turn schedule Plaintiff and other KSH/PSP pilots to fly on a particular trip, typically for one of the individual Defendants. In some instances, trips were scheduled far in advance, whereas other times Plaintiff and fellow KSH/PSP pilots flew on short notice, sometimes only a matter of a few hours. Plaintiff came to be well acquainted with not only the individual Defendants, but also their families, as some flights were one-day "out-and-back" business trips carrying one or more individual Defendants, whereas other trips were of far longer durations. For instance, when Plaintiff would fly an individual Defendant and his family on a

non-business trip lasting a week or more, Plaintiff would stay nearby, at the destinations, including Montana and Europe. Plaintiff thus frequently had occasion to interact with the individual Defendants and their families. Although all KSH/PSP pilots would occasionally be fully scheduled when a new flight request came in from one of the individual Defendants, the individual Defendants were reluctant to rely on outside, "contract" pilots, owing to safety concerns that had arisen when they had done so in the past, as well as familiarity with trust of Plaintiff and his colleagues built over several years.

26. Consequently, Plaintiff and his KSH/PSP pilot colleagues were extensively vetted by each of the individual Defendants before they were hired, and Plaintiff earned considerable trust with each of the individual Defendants over the four years that he flew them and their families, with one having specifically remarked to Plaintiff that he particularly trusted Plaintiff flying his daughter after she'd had an unsettling experience with a temporary, outside pilot who had mishandled turbulence. Far from being passive recipients of generic air transit, therefore, the individual Defendants were closely involved in the selection and management of KSH/PSP pilots, including Plaintiff.

### *Plaintiff Seeks to Take Paid Family Leave*

27. Throughout his employment, Plaintiff paid into what is effectively an insurance program for paid family leave.

28. In mid-2023, on learning that his wife was experiencing a high-risk pregnancy (twins due within an unusually long and indeterminate range of time), Plaintiff sought to arrange for a six-week family leave under this program, beginning in December of 2023 and extending through February of 2024.

29. In June of 2023 Plaintiff initiated what he believed to be a routine request to take paid family leave through the KSH/PSP human resources department. Plaintiff signed and submitted his completed family leave application to the appropriate KSH/PSP personnel in September of 2023.

30. However, Plaintiff's request for legally protected leave was derailed by Defendant Jeffrey Kelter. On hearing that Plaintiff had inquired with KSH/PSP human resources about family leave, Kelter asked to meet with Plaintiff one-on-one about his requested family leave.

31. During an October 2023 meeting between the two, Kelter was obstructive and hostile to the prospect of men in general, and Plaintiff specifically, taking family leave.

32. In that October 2023 meeting between Plaintiff and Defendant Kelter, Kelter expressed his incredulity and disappointment that Plaintiff was requesting family leave. Kelter was affronted that Plaintiff had even sought to take family leave at all, rather than instead negotiating for a piecemeal arrangement on Mr. Kelter's terms, terms grounded in Mr. Kelter's view of traditional marriage and childbirth roles. Mr. Kelter's dominant sentiment was that Plaintiff's taking family leave to participate in what was characteristically "women's work" had put Mr. Kelter (and by implication KSH/PSP and the other individual Defendants) "in a tough spot."

33. Kelter's comments to Plaintiff concerning Plaintiff taking family leave—which Kelter presented as a mere "proposal," not Plaintiff's legal entitlement—embody precisely the mindset underlying discrimination and adverse employment action "based on the belief that mothers should stay home with their children" that violates federal and state law. For example, while Plaintiff was attempting to arrange his family leave, Kelter told Plaintiff that when he

7

(Kelter) was Plaintiff's age, "your wife just took off and you went back to work" and that "most women" don't even want a man around at all after having given birth.

34. Despite Defendant Kelter's hostility, Plaintiff did ultimately take his legally protected family leave and was present for the birth and postnatal care of his twins, despite serious complications in his wife's pregnancy.

35. Plaintiff's leave period was December 16, 2023 through February 16, 2024.

### *Plaintiff is Terminated in Retaliation for Taking Family Leave*

36. Toward the end of Plaintiff's family leave, in February 2024, as he was preparing to return to work, Plaintiff checked the flight schedule. Plaintiff was surprised to discover that he had been scheduled to work on February 15, 2024, while he was still on family leave. Even so, Plaintiff contacted the KSH/PSP Director of Aviation to inform him that he was amenable to working as scheduled, even though his family leave had not yet concluded.

37. Plaintiff next received a message from KSH/PSP's Director of Aviation directing Plaintiff to come in for a meeting on February 16, 2024 to "get up to speed," purportedly in preparation for his return from leave.

38. In fact, at that February 16, 2024 meeting with the KSH/PSP Director of Aviation, Plaintiff was fired. Plaintiff is informed and believes and on that basis alleges that his termination was at the specific direction of Defendant Kelter, but also with the consent and approval of the other four individual Defendants.

39. Specifically, Defendant Kelter acted with the knowledge of, actual or constructive, and ratification by the other individual Defendants here: Robert Savage, Michael Fascitelli, Thomas Gahan, and Paul Salem.

40. The decision to abruptly terminate Plaintiff, a day after he had been scheduled by Defendants to fly and on the last day of his family leave, was plainly an impulsive one, with Defendants, notably Kelter, seemingly triggered by having been reminded of Plaintiff's asserting his legal right to paid family leave.

41. Plaintiff's termination was in retaliation for his having taken paid family leave. Defendants have no legitimate, non-discriminatory basis for Plaintiff's termination, as Plaintiff was consistently praised—including during the October 2023 meeting between Plaintiff and Defendant Kelter—for both his job performance as a pilot and for being well liked among other KSH/PSP employees, the individual Defendants and their families.

42. Additionally, during an earlier, July 2023 phone conversation between Plaintiff and Defendant Kelter, Kelter had told Plaintiff that he was "very appreciative of [Plaintiff's] work over the first half year," and that Plaintiff (and the other KSH/PSP pilots) would be receiving increased salary and bonuses as a result. Plaintiff understood Kelter to be saying that the bonus and pay raise would be effective immediately.

43. However, after months passed without either a bonus or a pay raise, Plaintiff sought further information from Kelter during a subsequent call between the two. During that call, Kelter purported to clarify that that the pilot bonus announced during the summer of 2023 was a non-discretionary, retention bonus, to be paid to all pilots in January 2024, including Plaintiff. As during their earlier meeting in June, Kelter again praised Plaintiff's performance, noting that he and the other individual Defendants regularly entrusted their families to fly with Plaintiff and commending Plaintiff for his attention to safety.

44. Plaintiff thus began his family leave in December of 2023, having been assured (twice) that his 2023 bonus would accrue in January of 2024 and that he would be returning to work as a KSH/PSP pilot on February 16, 2024.

***Defendants Renege on the Promise to Pay Plaintiff's Non-Discretionary Retention Bonus***

45. Plaintiff was not, however, paid the promised non-discretionary retention bonus despite Kelter having specifically promised the bonus to Plaintiff, and despite all other KSH/PSP pilots having received the non-discretionary retention bonus in January of 2024, when Mr. Plaintiff was still unambiguously employed by Defendants.

46. Plaintiff was on paid family leave at the end of 2023 and through February of 2024 and was thus not only still employed by KSH/PSP in January of 2024 but legally entitled to resume with his job at the completion of that leave. Yet Plaintiff did not receive the bonus contemporaneously with other pilots who had been promised, and received, the same non-discretionary retention bonus in January of 2024.

47. Accordingly, under New York wage and hour law or, alternatively, under contract common law and the equitable doctrine of reliance, Mr. Simonsen is owed the bonus that he was promised and that accrued while he was still employed by KSH/PSP.

## CAUSES OF ACTION

**First Cause of Action (Against Defendants KSH Aviation, KSH Capital, and PSP Management LP)**
**Discrimination and Retaliation Under Title VII**

48. Plaintiff hereby realleges and incorporates the allegations of each foregoing paragraphs.

10

49.     Plaintiff's claim of discrimination based on his sex is authorized by Title VII for relief as a consequence of the unlawful actions of the corporate Defendants here, KSH Aviation, KSH Capital, and PSP Management LP.

50.     Defendants KSH Aviation, KSH Capital, and PSP Management LP were Plaintiff's employer and/or joint employers within the meaning of Title VII.

51.     Defendants violated Title VII's prohibition on discrimination in employment on the basis of sex and/or gender by, *inter alia*, frustrating Plaintiff's application for the paid family leave that he was legally entitled to; doing so based on antiquated gender-based stereotypes related to childbirth and childcare; failing to pay Plaintiff his promised non-discretionary retention bonus when it accrued in January of 2024; and terminating Plaintiff in February of 2024 in retaliation for Plaintiff having taken family leave.

52.     Defendants KSH Aviation, KSH Capital, and PSP Management LP thus discriminated and retaliated against Plaintiff in violation of Title VII, specifically the Pregnancy Discrimination Act of 1978, which amended section 701 of the Civil Rights Act of 1964 to provide that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth".

53.     Accordingly, Defendants KSH Aviation, KSH Capital, and PSP Management LP engaged in unlawful employment practices prohibited by Title VII by discriminating and retaliating against Plaintiff with respect to the terms, conditions, or privileges of Plaintiff's employment because Plaintiff was a man seeking to take family leave in connection with the birth of a child and by failing to pay Plaintiff his accrued non-discretionary bonus.

**Second Cause of Action (Against All Defendants)**
**Discrimination and Retaliation Under NYSHRL § 296 (Familial Status Discrimination and Retaliation) and New York Paid Family Leave Act (N.Y.L.L. §§ 215, 297)**

54. Plaintiff hereby realleges and incorporates the allegations of each foregoing paragraphs.

55. Plaintiff alleges that Defendants violated the New York State Human Rights Law's prohibition of discrimination on the basis of familial status by, *inter alia*, frustrating Plaintiff's application for the paid family leave that he was legally entitled to based on antiquated gender-based stereotypes related to childbirth and childcare; failing to pay Plaintiff his promised non-discretionary retention bonus when it accrued in January of 2024; and terminating Plaintiff in February of 2024 in retaliation for Plaintiff having taken family leave.

56. Plaintiff further alleges Defendants' violation of New York's Paid Family Leave Act, which expressly seeks to relieve workers, whether male or female, from having to choose between their jobs and participating in the birth of a newborn by mandating that workers be permitted to take up to 12 weeks off with pay if they have contributed into an approved paid leave insurance program, as Plaintiff had during his employment with Defendants.

57. The Paid Family Leave Act also requires that employers hold the jobs of employees who take family leave until they return defines "threaten, penalize, or in any manner discriminate or retaliate against any employee" to include using an employee's lawful leave of absence to terminate or otherwise negatively affect the employee's terms and conditions of employment.

58. Accordingly, Defendants violated the NYSHRL by taking adverse employment action against Plaintiff based on the belief that only mothers--not fathers like Plaintiff--should be at home with their children during and around the time of childbirth, thereby committing illegal

familial status discrimination and violating the Paid Family Leave Act, and entitling Plaintiff to recover compensatory, statutory damages, and punitive damages as well as attorneys' fees and costs.

### Third Cause of Action (Against All Defendants)
### Unpaid Wages (N.Y. Lab. Law § 198 1.a.)

59. Plaintiff hereby realleges and incorporates the allegations of each foregoing paragraphs.

60. Plaintiff was owed, as wages, a non-discretionary retention bonus that accrued in January of 2024.

61. Plaintiff was employed by Defendants from December 2019 through February 16, 2024. Accordingly, Plaintiff was employed by Defendants throughout January 2024.

62. Plaintiff was never paid his non-discretionary bonus.

63. Accordingly, under New York law Plaintiff is owed as liquidated damages up to twice the amount of these unpaid wages as well the costs and attorneys' fees entailed in recovering those unpaid wages.

### Fourth Cause of Action (Against All Defendants)
### Breach of Contract/Reliance

64. Plaintiff realleges and incorporates the allegations of each foregoing paragraphs.

65. Defendants contractually agreed to pay Plaintiff a non-discretionary, retention bonus if he remained employed by Defendants in January of 2024.

66.     Defendant Jeffrey Kelter, acting in the scope of his authority and as an agent of the other Defendants, specifically conveyed the promise to pay Plaintiff a non-discretionary retention bonus, first in a conversation with Plaintiff in June of 2023, and then again in a subsequent October 2023 conversation between Plaintiff and Kelter.

67.     Thereafter, Plaintiff reasonably conducted himself in reliance on receiving the promised non-discretionary bonus so long as he remained employed by Defendants through January 2024.

68.     Plaintiff was employed by Defendants from December 2019 through February 16, 2024.  Accordingly, Plaintiff was employed by Defendants throughout January 2024.

69.     Because Defendants breached their promise to Plaintiff, Plaintiff is owed the full amount of the promised non-discretionary bonus, as well as any consequential damages.

**Fifth Cause of Action (Against Defendants Jeffrey Kelter, Robert Savage, Michael Fascitelli, Thomas Gahan, and Paul Salem)
Aiding and Abetting Under NYSHRL (N.Y. Exec. Law § 296(6)**

70.     Plaintiff realleges and incorporates the allegations of each foregoing paragraphs.

71.     New York State Executive Law § 296(6) provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of the acts forbidden under this article, or to attempt to do so."

72.     Each of the individual Defendants was well acquainted with Plaintiff during the time he worked as a pilot for them.  Each individual Defendant took an active role in personnel decisions involving KSH/PSP pilots, including hiring and firing decisions.  Thus while Defendant Kelter appears to have been the prime mover in arranging for Plaintiff's abrupt retaliatory termination, some time between February 15, 2024 (when

14

Plaintiff had been put on the KSH/PSP flight schedule for one of the individual Defendants) and February 16, 2024 (when Plaintiff was terminated), Plaintiff is informed and believes, and on that basis alleges, Defendant Kelter conferred with and obtained the consent of the other individual Defendants to terminate Plaintiff also in retaliation for Plaintiff having taken family leave..

73. Likewise, the individual Defendants assented to and ratified the decision to withhold Plaintiff's accrued non-discretionary bonus, also in retaliation for Plaintiff having taken family leave.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

a. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the NYSHRL, and the New York Paid Family Leave Act on the basis of his sex, and did so willfully and egregiously;

b. Declaring that Defendants failed to pay Plaintiff all wages owed to him, and in so doing were in breach of contract and/or in violation of the NYLL in an amount to be determined at trial;

c. Awarding Plaintiff compensatory and consequential damages for lost future wages caused by Defendants' retaliatory termination of Plaintiff in an amount to be determined at trial;

d. Awarding Plaintiff compensatory damages for mental and emotional injury and for distress, pain, and suffering for an amount to be determined at trial;

e.  Awarding Plaintiff compensatory and liquidated damages for unpaid wages due to Defendants' breach of contract and/or Plaintiff's reasonable reliance in an amount to be determined at trial;

f.  Awarding Plaintiff punitive damages in the amount of $5,000,000;

g.  Awarding Plaintiff attorneys' fees and costs incurred in the prosecution of the action;

h.  Awarding statutory pre- and post-judgment interest, where applicable; and,

i.  Awarding such other relief as the Court may deem proper.

## JURY DEMAND

Pursuant to Fed.R.Civ.P. R. 38(b), Plaintiff respectfully demands that this proceeding be tried to a jury.

Dated: Staatsburg, NY
January 6, 2025

**MOSS & BYRNES PLLC**

By: _____
Andrea Moss AM4202
Attorneys for Plaintiff
187 Hollow Rd.
Staatsburg, NY 12580
andrea@mossbyrnes.com
212.242.6152